J^LOLLEY, J.
This matter concerning an ongoing controversy between the Caddo Parish Commission (“Caddo Parish”) and the Caddo Parish Sheriff, Steve Prator, (“the Sheriff’) has been remanded from the Louisiana Supreme Court to address one remaining issue regarding Caddo Parish’s claim to a credit for certain costs relative to the housing of out-of-Caddo-Parish inmates at the parish jail (“the credit issue”). For the reasons assigned, we affirm the trial *351 court’s judgment denying Caddo Parish’s reconventional demand.
JURISPRUDENTIAL DEVELOPMENT
The history of this case is set forth in our prior opinion, Prator v. Caddo Parish, 38,085 (La.App.2d Cir.01/28/04), 865 So.2d 932, writ granted, 2004-0794 (La.05/21/04), 874 So.2d 159 (“Prator I”).
When ruling on Caddo Parish’s request for declaratory judgment that it is entitled to a credit from the Sheriff for expenses incurred relative to housing Department of Corrections (“DOC”) federal and out-of-parish inmates in accordance with law, the trial court stated the following:
The Parish relies on Louisiana R.S. 15:824(B)(2) “when the State makes payment in accordance with this subsection no additional compensation from the Parish Governing Authority shall be paid to the Sheriff for the care of those prisoners being held for the department.” The additional compensation referenced is to the minimum of $3.50 per day per Parish inmate. This simply means that the Sheriff may not collect twice, once from the parish and once from the State or Federal Government, for the same prisoner. The' evidence at trial shows that rather than paying twice, the Parish is receiving a benefit to the extent that income from State or Federal prisoners subsidizes the overall cost of the jail. There is no statutory authority allowing the Parish a credit against its fixed costs for the jail. Attempts to impose a share of fixed costs for jails have been soundly rebuffed in Webre v. Wilson, 951281 (La.App. 1st Cir.04/04/96), 672 So.2d 1124 and City of Shreveport v. Caddo Parish, 27,519 (La.App.2d Cir.06/23/95), 658 So.2d 786, writ denied, 95-2285 (La.11/27/95), 663 So.2d 728, writ denied, 95-2298 (La.11/27/95), 663 So.2d 729.
An appeal by Caddo Parish ensued and following our ruling in Prator I, the Sheriff applied for a rehearing, which was denied. Both parties sought writs of certiorari, and it was Caddo Parish’s writ which prompts this remand. Although the Louisiana Supreme Court held that there were no errors in this court’s disposition of all other issues raised in Prator I, it did conclude an error in our holding that there was no justiciable controversy as to the “credit issue.” That portion of Prator I was vacated. The matter was remanded to this court with the directive to address the merits of Caddo Parish’s assignment of error number 4 regarding its reconven-tional demand, which specifically urges that Caddo Parish is entitled to a credit for certain costs relative to the housing of non-parish inmates at the Caddo Parish Correctional Center (“CCC”). See Prator v. Caddo Parish, 2004-0794 (La.12/01/04), 888 So.2d 812. Accordingly, we respectfully. infer that the directive from the Louisiana Supreme Court entails whether the trial court committed manifest error in finding that Caddo Parish was not entitled to a credit from the Caddo Parish Sheriff for expenses incurred relative to housing DOC, federal, and out-of-parish inmates.
APPLICABLE STATUTES
Louisiana C.C.P. art. 1872 states that a declaratory judgment or “declaration of rights” may be rendered to address a controversy involving the parties’ legal relations as affected by a statute.
|aThe following statutes are pertinent to the relationship between a police jury or governing agency of a parish and its sheriff:

La. R.S. 33:1(715:

The police jury of each parish shall provide a good and sufficient court-house, with rooms for jurors, and a good and sufficient jail, at such place as they may *352 deem most convenient for the parish at large, provided that when the seat of justice is established by law, they shall not have power to remove it. ■

La. R.S. 88:14.82, in pertinent part:

The compensation, fees, and costs allowed sheriffs, the parish of Orleans excepted, for all services in criminal matters, shall be the following:
(1) For keeping and feeding of prisoners in jail not less than three dollars and fifty cents per diem for each prisoner. Any surplus funds remaining at the end of the fiscal year shall be returned to the parish governing authority.
[[Image here]]

La. R.S. 15:566, in pertinent part:

A. The Department of Corrections shall pay the sum of eighteen dollars and twenty-five cents per day to the sheriff of each parish, or to the governing authority of those parishes in which said authority operates the parish jail, for feeding and maintaining each prisoner who has been convicted of a crime and sentenced to imprisonment at a state penitentiary, who is held in the parish jail without bail, pending an appeal. Each sheriff shall file a monthly report with the Department of Corrections and the local governing authority and shall be paid for such charges on a monthly basis by the Department of Corrections. However, in the parish of Orleans, said payment shall be-to the • criminal sheriff of the parish of Orleans, to be. reimbursed to the city of New Orleans.
When the Department of Corrections makes payment in accordance with this Subsection, no additional compensation |4from the parish governing authority shall be paid for the care of such prisoners.
[[Image here]]

La. R.S. 15:702:

The governing authority of each parish shall be responsible for the physical maintenance of all parish jails and prisons.' In those parishes in which the governing authority operates the parish jail the governing authority shall pass all bylaws and regulations they may deem expedient for the police and good government of the jails and prisons being operated by the parish governing authority.

La. R.S. 15:704':

Each sheriff shall be the keeper of the public jail of his parish, and shall by all lawful means preserve the peace and apprehend all disturbers thereof, and other public offenders.

La. R.S. 15:705(A)(1):

The sheriffs or jailkeepers shall supply each prisoner daily with wholesome food sufficient in quantity for the proper maintenance of life. They shall provide the prisoners with clothing suited to and sufficient for the season.
* * *

La. R.S. 15:824, in pertinent part:

* * *
(B)(1)(a) In the event any individual has been committed to the department for confinement which is or has been delayed or prevented after final sentence by court order restricting the department from institutionalizing the individual, or- when the individual is not institutionalized in a state penal or corrections institution because of lack of facilities under the control of the department, or the department otherwise refused to accept the individual for confinement, which resulted or has resulted in the individual being confined in a parish jail *353 or institution after final sentence, or when he is being held in the parish jail [ ^without bail, pending an appeal, or when he is a participant in a Blue Walters Substance Abuse Program by order of a court in lieu of revocation of probation or by the Board of Parole in lieu of revocation of parole, the department shall pay to each parish sheriff, or to the governing authority of those parishes in which the governing authority operates the parish jail, for keeping and feeding the individual in the parish jail the sum of twenty-two dollars and thirty-nine cents per day from date of sentencing until the individual is confined in a penal or correctional institution under the supervision of the department.
(B)(1)(b) In addition, the department shall reimburse only the cost of extraordinary medical expenses incurred in emergency circumstances when the health of the inmate requires the use of the closest services available. The department shall require an inmate to file a claim for reimbursement with any available health or medical insurer in accordance with R.S. 15:831.
* * #
(B)(2) When the state makes payment in accordance with this Subsection, no additional compensation from the parish governing authority shall be paid to the sheriff for the care of those prisoners being held for the department.
[[Image here]]
DISCUSSION
The inception of the relationship between Caddo Parish and the Caddo Parish Sheriff Office can be found in La. R.S. 15:821, et seq. As previously established, Caddo Parish owns CCC, and the Sheriff is statutorily deemed-to be the keeper of CCC and has the obligation to operate the facility. See La. R.S. 15:704. At the outset, it is well to go back to the original Answer To Petition For Declaratory Judgment And Reconventional Demand filed by Caddo Parish to ascertain, what credit it is seeking from the Sheriff. One only has to examine the numerous briefs filed in this ever | (¡increasingly complicated matter to realize that much of the original claim has been expanded well beyond the original pleadings filed by Caddo Parish. It is our responsibility to clarify the credit issue as originally placed before the trial court and now before this court for reconsideration. In that regard; Caddo Parish’s first argument to this court reflected the scope‘of its reconventional demand on the credit issue as follows:
Applicable Louisiana law, La. R.S. 15:566 and La. R.S. 15:824, provides that when the Caddo Parish Sheriffs Office receives per diem payments for housing state prisoners, no additional compensation from the parish governing authority shall be paid for the care of such prisoners. Unless Caddo Parish receives a credit for housing state prisoners, contrary to state law the Caddo Parish Sheriffs Office will be receiving funds in addition to the state’s per diem for housing prisoners.
The statutes provide that the sheriffs shall be compensated by police juries “[f]or keeping and feeding of prisoners in jail not less than three dollars and fifty cents per diem for each prisoner” (hereinafter sometimes referred to as the “$3.50 per diem”). See La. R.S. 33:1432, which refers to parish prisoners only. Louisiana R.S. 15:824(B)(l)(a) provides that the DOC shall pay to each parish sheriff, or to the governing authority of those parishes in which the governing authority operates the parish jail, for keeping and feeding the individual in the parish jail the sum of $22.39 per day for the keeping and feeding *354 of state prisoners (hereinafter sometimes referred to as the “$22.39 per diem”). Louisiana R.S. 15:824(B)(2) provides that no additional compensation from the parish governing authority shall be paid to the sheriff for the care of these state prisoners.
[7The evidence shows that Caddo Parish has paid 100% of the general operating expenses of CCC. This would include utilities and laundry, as well as general maintenance of the CCC facility and payment of the long-term debt of the facility.
At the heart of the present controversy is Caddo Parish’s payment of its $3.50 per diem pursuant to La. R.S. 33:1432. Caddo Parish pays the statutory minimum plus expenses for the ordinary and extraordinary medical care for Caddo Parish prisoners. As the evidence- established, the Sheriff has commonly housed a certain number of inmates for the State of Louisiana, agencies of the Federal government, as well as from other parishes. As stated, these prisoners amount to approximately 25% of the prison population of CCC.
As the record reveals, the Sheriff is receiving from the DOC the $22.39 per diem for each state prisoner it confines at CCC.[1] Caddo Parish contends it is entitled to a reimbursement .from the Sheriff of a portion of the operating expenses of CCC which would correspond to the proportion of non-parish inmates housed there. Basically, it contends it should be reimbursed for expenses for the keeping and feeding of these non-parish inmates. The record reflects that out of the $22.39 per diem the Sheriff receives from DOC, he is paying for supplies for these non-parish inmates. As the parties stipulated that Caddo Parish is responsible for costs for |Rhygiene kits, subscriptions, educational supplies, and recreational supplies for Caddo Parish inmates only, conversely, one can surmise Caddo Parish is not paying for those expenses relative to non-parish inmates. See Joint Stipulation 9.[2] Thus, the question for our consideration is what credit, if any, is due Caddo Parish from the Sheriff for housing these non-parish inmates at CCC.
Caddo Parish takes the position that if it pays for all of the operating expenses of CCC, then effectively it is providing additional compensation to the Sheriff for the benefit of non-parish DOC inmates in violation of La. R.S. 15:824(B)(2). More specifically, it urges that any failure by Caddo Parish to assert its right to this credit would in effect constitute a prohibited donation of public funds pursuant to Article VII, Section 14 of the Constitution of Louisiana, 1974; Caddo Parish also argues that it should prevail on the credit issue, because the Sheriff has not shown evidence that there would not be a reduction of certain costs currently being paid if these non-parish inmates were not housed at CCC. Ultimately, Caddo Parish requests that we determine a reduction in its financial obligation to the Sheriff in proportion to the percentage of the non-parish inmates to the total parish jail population. The specific expenses requested by Caddo Parish in its Supplemental Brief to be considered include the following:
1. Medical expenses, including medical consumables, personnel costs, and costs of medical services provided by *355 outside health care providers, for DOC, federal and out-of-parish prisoners;
[n2. Transportation expenses for DOC, federal and out-of-parish prisoners; and
3. All other operational expenses or common costs that benefit both parish and DOC/federal prisoners incurred by Caddo Parish in housing DOC, federal and out-of-parish prisoners at CCC.
Conversely, the Sheriff contends that the clear intent of La. R.S. 15:824(B)(2), is that it relieves Caddo Parish of having to pay the $3.50 per diem on account on any non-parish inmates, i.e., if the Sheriff receives the $22.39 per diem for DOC inmates, then he is not entitled to receive from Caddo Parish the $3.50 per diem for those inmates. We agree.
Interpretation pf these statutes begins, as it must, with the language of the statute itself. David v. Our Lady of the Lake Hosp., Inc., 2002-2675 (La.07/02/03), 849 So.2d 38; Touchard v. Williams, 617 So.2d 885, 888 (La.1993). When a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in search of the legislative intent. La. C.C. art. 9; La. R.S. 1:4. When the wording of a section of the revised statutes “is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit.” La. R.S. 1:4; Trahan v. Coca Cola Bottling Co. United, Inc. 2004-0100 (La.03/02/05), 894 So.2d 1096.
The $3.50 per diem owed by the parish and the $22.39 per diem owed by the DOC address the “keeping and feeding” expenses of parish and state prisoners, respectively. By implication, La. R.S. 15:824(B)(l)(b) indicates that ordinary medical expenses of the prisoners are included in these two ^“keeping and feeding” per diem amounts. Of course, the Sheriffs obligation to provide sufficient and wholesome food and suitable clothing under La. R.S. 15:705(A)(1) would also be covered by each of these two statutory per diem reimbursements. Aside from these and other personal and variable costs clearly associated with each prisoner on a daily basis, the fixed costs and more general costs associated with the maintenance of the • prison do not appear to be addressed by the legislature in these per diem statutes. Therefore, those costs, which would be present on any given day for the prison and its staff even in the absence of all prisoners, remain the obligation of the parish under La. R.S. 33:4715.
From this interpretation of the scope of these “keeping and feeding” per diems, Caddo Parish is not entitled to a credit for the ordinary or extraordinary medical expenses for DOC, federal and out-of-parish inmates because Caddo Parish is not responsible for those costs in the first place. Caddo Parish is not entitled to a credit for transportation expenses for the costs of maintaining appropriate vehicles and personnel for the transporting of parish prisoners from CCC to the Caddo Parish Courthouse for judicial proceedings. Any transportation expenses directly related to DOC, federal and out-of-parish inmates would be an expense which the Sheriff should address with the DOC or other governmental bodies. Any identifiable variable expense associated solely with a DOC, federal or out-of-parish inmate, such as the cost of gasoline for transportation of such inmate to the hospital, should be paid by the Sheriff out of the $22.39 per diem or contractual per diem pertaining to those inmates respectively.
| n Regarding other general and common operational costs of CCC, Caddo Parish *356 argues that those costs would surely be reduced if there were no out-of-parish inmates. Yet, we find that those costs, which are more fixed than variable, have not been clearly addressed by any evidence. There is a pertinent lack of evidence that the fixed costs of maintaining and operating CCC would be reduced by 25% if CCC no longer housed non-parish inmates. Similar to this case, in City, of Shreveport, supra, the city sought a credit for fixed expenses for housing felony pretrial detainees. In that case, we held that the city was not entitled to recover fixed costs which it found would be present even without the presence of the felony pretrial detainees. We further acknowledged that there was no statutory authority for payment of the city’s fixed jail costs and opined that such an issue would perhaps be best addressed by future legislation.
To interpret La. R.S. 15:824(B)(2) as providing credit to Caddo Parish when the Sheriff receives a per diem from non-parish agencies for housing non-Caddo-Parish inmates at CCC, would require us to .find that portions of the statutory authority cited by the Sheriff have been repealed by implication. We are unwilling to take that liberty.
As expressed in City of Shreveport, supra, perhaps in. the near future, we may benefit from specific legislation or a properly postured lawsuit that would give more clarity to this issue. Much has changed in the areas of housing prisoners in local or regional correctional centers since the enactment of many of the above quoted provisions that attempted to govern the relationship of these two political entities in an earlier time. It is entirely Impossible that the ever increasing numbers of out-of-parish inmates being housed (DOC, Federal and out-of-parish) at correctional centers in Caddo and other parishes are having an adverse impact upon the fixed operational and maintenance expenses of the facilities themselves, and other assets of the parish governmental authorities, which are not covered by the statutory contractual per diem. However, that issue is not properly before us at this time.
In the meantime, Caddo Parish’s request to this court to determine whether the cited per diem statutes provide Caddo Parish with a legal basis to seek a credit against the fixed costs of CCC may be simply answered. We find no such present legal basis, and, therefore, find Caddo Parish’s argument without merit. The clear and unambiguous language of La. R.S. 15:824 is that if the Sheriff receives a per diem for non-parish inmates, Caddo Parish is not required to pay the minimum of $3.50 per diem for the personal and variable expenses clearly associated with those- inmates. So considering, we affirm that portion of the trial court’s judgment denying Caddo Parish’s reconventional demand fór erédit for certain costs relative to the housing of out-of-parish inmates at CCC. Costs of these proceedings totaling $212.59 are assessed against the Sheriff at 60% ($127.55) and against Caddo Parish at 40% ($85.04) pursuant to La. R.S. 13:5112.
AFFIRMED.

. Pursuant to the language of La. R.S. 15:824(B)(l)(a) and (B)(2) the DOC has the option of paying the per diem to either the parish sheriff or to the governing authority of that parish in which the governing authority operates the parish jail. This provides an option for Caddo Parish to seek payment directly from the DOC for the state prisoners held at CCC.

. Caddo Parish has and will provide hygiene kits, linens, bedding, uniforms, and related items for Caddo Parish prisoners only.