STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2021 CA 0552

DANIEL H. EDWARDS, IN HIS OFFICIAL CAPACITY AS SHERIFF OF
TANGIPAHOA PARISH, AND THE LAW ENFORCEMET DISTRICT OF THE
PARISH OF TANGIPAHOA THROUGH DANIEL H. EDWARDS, EX-
OFFICIO CHIEF EXECUTIVE OFFICER

VERSUS

TANGIPAHOA PARISH GOVERNMENT THROUGH ITS PARISH COUNCIL
AND PARISH PRESIDENT, GORDON BURGESS

**Judgment Rendered:** **DEC 0 8 2022**

\* \* \* \* \* \*

Appealed from the
Twenty-First Judicial District Court
In and for the Parish of Tangipahoa
State of Louisiana
Suit Number 2016-00065

Honorable Jeffrey S. Johnson, Presiding

\* \* \* \* \* \*

T. Jay Seale, III                           Counsel for Plaintiff/2ⁿᵈ Appellant
Georgia K. Thomas                           Daniel H. Edwards, Law Enforcement
Celeste H. Shields                          of the Parish of Tangipahoa
Hammond, LA

Patrick R. Jackson                          Counsel for Defendant/1ˢᵗ Appellant
Bossier City, LA                            Tangipahoa Parish Government

E. Madison Barton                           Counsel for Defendant/Appellee
New Orleans, LA                             Gordon Burgess

\* \* \* \* \* \*

BEFORE: GUIDRY, WELCH, HOLDRIDGE, CHUTZ, AND PENZATO, JJ.

Welch, J. Concurs in part and dissents in part and assigns reasons

Penzato, J., concurs and assigns reasons

Holdridge J. concurs and assigns reason

Chutz, J., concurs

**GUIDRY, J.**

Plaintiff, Daniel H. Edwards, in his Official Capacity as Sheriff for Tangipahoa Parish (Sheriff), and defendant, Tangipahoa Parish Government (Parish), appeal from trial court judgments setting forth the expenses that each party is to bear in running the Tangipahoa Parish Jail and in caring for prisoners housed therein. For the reasons that follow, we affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

Prior to 2015, the Sheriff and the Parish had an agreement regarding the sharing of expenses at the Tangipahoa Parish Jail. However, on December 1, 2014, the Sheriff notified the Parish that effective January 1, 2015, the Sheriff would no longer pay or participate in paying fixed jail expenses that it alleged were the legal responsibility of the Parish. The Sheriff subsequently sent monthly letters to the Parish requesting reimbursement for those expenses the Parish was obligated by statute to pay.

Thereafter, on January 7, 2016, the Sheriff and the Law Enforcement District of the Parish of Tangipahoa filed a petition, naming as defendants Gordon Burgess, in his official capacity as Parish President of Tangipahoa Parish and Chief Executive Officer of Tangipahoa Parish, and the Parish. The Sheriff asserted that pursuant to La. R.S. 15:704, the Sheriff is the keeper of the public jail of his Parish, and the Parish government is responsible for the physical maintenance of parish jails and prisons pursuant to La. R.S. 15:702. The Sheriff stated that statutory provisions as well as court decisions have developed an allocation of responsibilities for operating Parish jails and paying for the costs thereof. The Sheriff alleged that the defendants have failed to meet their legal responsibilities regarding the jail by failing and refusing to pay certain costs they are statutorily mandated to pay, either by not funding those costs directly or by not reimbursing the Sheriff when he had advanced those costs and sought reimbursement. According to the Sheriff, those costs include:

2

providing a good and sufficient jail, La. R.S. 33:4715; physical maintenance of the jail, La. R.S. 15:702; annually appointing a physician to provide care to prisoners housed in the jail, La. R.S. 15:703; paying the Sheriff compensation for "keeping and feeding" prisoners in the jail, La. R.S. 33:1432; paying for all expenses incurred in the arrest, confinement, and prosecution of persons accused or convicted of crimes, including their removal to prison, La. R.S. 15:304; and providing and bearing the expense for suitable offices and furniture for various offices of the parish, including the Sheriff, La. R.S. 33:4713. The Sheriff alleged that from March 2015 through October 2015, the Sheriff submitted bills to defendants for payment of the aforementioned expenses, at that time totaling $726,737.48, and alleged that costs continued to accrue. Accordingly, the Sheriff sought judgment ordering the Parish to pay the amounts owed.

The Parish filed an answer and reconventional demand, asserting that until January 1, 2015, funding for the Tangipahoa Parish Jail was provided according to agreements entered into by the Parish and the Sheriff, but the Sheriff subsequently decided to no longer honor the agreement and to transfer hundreds of thousands of dollars in annual costs to the Parish. The Parish alleged that the Sheriff sought to transfer costs to the Parish not assigned to it by statute. The Parish denied that it owed anything more than what it had been paying and sought reimbursement for all costs paid by the Parish for non-parish prisoners.

The Sheriff thereafter filed a motion for partial summary judgment on April 22, 2016, requesting reimbursement from the Parish for certain jail expenses and holding the Parish liable to the Sheriff for $62,886.68 for jail expenses for January 2015, $50,694.20 for evidence room shelving, and $3,015.00 for a security system for the evidence room. Following a hearing, the trial court signed a judgment on January 23, 2107, granting the motion in part and ordering the Parish to reimburse the Sheriff for expenditures made by his office for shelving and the security system

3

for the evidence room. The trial court denied the motion as to all other issues raised and deferred consideration of those issues to a trial on the merits.

In lieu of a trial, the parties submitted stipulations as to the facts and agreed to submit argument on the remaining issues in cross motions for summary judgment. Therefore, on November 28, 2017, the Sheriff filed a motion for summary judgment on his claim for reimbursement from the Parish for certain jail expenses, asserting that the Parish was legally obligated to provide for the jail and its physical maintenance and for certain fixed jail expenses. The Sheriff asserted that the Parish was liable to the Sheriff for $1,744,743.60 for jail expenses for January 2015 through April 2017 and for additional amounts that have been billed but not paid for May 2017 through September 2017. On November 30, 2017, the Parish filed its motion for summary judgment, seeking a declaration that the Parish has the right to fix and regulate its expenditures for the jail and that the Sheriff is not entitled to receive compensation from the Parish for the care of prisoners held in Tangipahoa Parish Jail for the Louisiana Department of Public Safety and Corrections, for federal prisoners, or for work release prisoners. As such, the Parish asserted that the Sheriff must reimburse the Parish for any such compensation he has received for the care of such prisoners.

Following a hearing on the cross-motions for summary judgment, the trial court signed a judgment on July 11, 2018, granting in part and denying in part the motions for summary judgment filed by each party and ordering that any agreement that may have existed between the Sheriff and the Parish is not enforceable or binding upon either party and is not controlling as to the issues presented in either motion for summary judgment; that the Parish is not liable for the expense of or responsible for the care of non-parish prisoners (which includes prisoners held for the DPSC, except for parole holds, prisoners held for the U.S. Marshall's office, Bureau of Prisons, work release prisoners, and prisoners held for any other parish,

state, or federal agency); that the Parish is not responsible for any variable expenses attributable to non-parish prisoners; that the Parish is not entitled to a credit for funds received by the Sheriff for the care of non-parish prisoners; that the Parish is responsible for the fixed costs associated with running the jail, which are defined as those costs associated with running the jail regardless of prison makeup or the presence or absence of prisoners, and include utilities (water, gas, electricity), maintenance employees, facility and equipment maintenance and supplies, equipment and garbage; that the Parish is responsible for the entire cost of parish prisoners; that for variable costs, which are incurred by both Parish and non-Parish prisoners, the Parish is responsible for its pro rata share of these costs, which include laundry rental, professional services, prisoner supplies, food, Insync records software, medical supplies from January 1, 2015-July 30, 2015, medical malpractice premiums, nurse practitioner salary benefits, salary paid to Dr. Winkler, and contract medical services provided by CorrectHealth of Tangipahoa, LLC (CorrectHealth) from August 1, 2015 forward; and that any amount paid or to be paid in the future by the Parish pursuant to and in accordance with the provisions of La. R.S. 13:5535(1) are to be treated as a credit towards the total cost owed by the Parish for the keeping and feeding of parish prisoners.

The Sheriff filed a motion for new trial, asserting that the trial court's finding that medical provider expenses are a variable expense that both parties are responsible for is contrary to the law and evidence and also that the $3.50 per day per diem rate is compensation paid to the Sheriff for services he provides in keeping and feeding prisoners and the Parish is not entitled to a credit or offset for that amount towards the cost of food for its inmates.

In a judgment signed on October 9, 2018, the trial court granted the motion for new trial on the issue of the medical services contract and denied it as to the $3.50 per diem fee issue. The new trial was subsequently held on September 6,

5

2019. At the conclusion of the trial, the court recessed and left the record open for the court to review the depositions and exhibits that were submitted at trial. Thereafter, in a judgment signed on September 29, 2020, the trial court identified the issue presented as whether the medical costs are variable or fixed expenses, and if variable, what percentage of those costs are attributable to parish prisoners and non-parish prisoners. The court found that medical staff costs are fixed and therefore, one hundred percent of those costs are the responsibility of the Parish. The trial court further found that the Sheriff is responsible for that portion of variable costs attributable to the presence in the jail of non-parish prisoners. As a means of dividing the healthcare costs of the Sheriff and the Parish, and relying on the testimony of Dr. Carlo Musso, the trial court devised a proxy, which ascribed approximately twenty-four percent of the medical costs to the Sheriff and seventy-six percent of the medical costs to the Parish commencing August 1, 2015. The trial court found that its prior judgment regarding the time period prior to August 1, 2015, remained in effect, as no evidence was introduced regarding that period. The judgment finally provided that any prior judgment rendered by the court remained in effect unless expressly modified therein.

Thereafter, both the Sheriff and the Parish appealed from the July 11, 2018 and September 29, 2020 judgments. After the appeals were lodged, this court issued a Rule to Show Cause Order, noting that the July 11, 2018 and September 29, 2020 judgments appeared to lack the appropriate decretal language disposing of and/or dismissing the claims(s) of the petitioners. On July 19, 2021, the trial court signed a consolidated final judgment, which superseded the January 23, 2017, July 11, 2018, and September 29, 2020 judgments. The consolidated judgment found that any agreement entered into between the Sheriff and the Parish prior to January 1, 2015, apportioning jail costs, costs of the evidence room, or transportation costs of

6

prisoners, has no application after January 1, 2015, and is unenforceable as between the parties.

With regard to the motion for partial summary judgment filed by the Sheriff on April 22, 2016, the trial court ordered the Parish to reimburse the Sheriff for expenditures made by his office for shelving for the evidence room in the amount of $50,644.20 and for a security system for the evidence room in the amount of $3,015.00. With regard to the motions for summary judgment filed by the Sheriff and the Parish in November 2017, the trial court ordered that the Parish reimburse the Sheriff for one hundred percent of the utility bills (water, gas, electricity, and garbage disposal), jail facility maintenance and equipment maintenance, and jail maintenance employees from August 1, 2015 forward, having found such costs to be fixed costs for which the Parish is solely responsible. Further, the trial court found that while the Parish is liable for one hundred percent of the variable costs attributable to Parish Prisoners, the Parish has no liability for variable costs attributable to non-parish prisoners. As such, the trial court found that the Parish is liable for a share of the monthly variable costs equal to a reasonable approximation to the ratio of Parish prisoner population to total prisoner population in each month. The trial court found these variable costs include laundry rental, professional services, prisoner supplies, food, Insync records software, and medical supplies not included in the CorrectHealth contract and ordered the Parish to reimburse the Sheriff for a proportional share of these costs based on Parish and non-Parish populations. Additionally, the trial court found, from January 1, 2015 to July 30, 2015, that the Parish is liable for a proportional share based on population of the medical supplies, medical malpractice premiums, nurse practitioner salary and benefits, and the salary paid to Dr. Winkler and ordered the Parish to reimburse the Sheriff for a proportional share of these costs based on Parish and non-Parish populations.

7

With regard to medical costs, the trial court found that the Parish is liable for a suitably apportioned share of medical expenditures at the jail. After finding one hundred percent of medical staff costs from August 1, 2015, to be fixed costs for which the Parish is responsible and finding that the Sheriff is responsible for that portion of variable medical costs from August 1, 2015, forward attributable to the presence of non-parish prisoners, the court devised a reasonable proxy for dividing the responsibilities for variable healthcare costs of the Sheriff and the Parish. This proxy attributed twenty-four percent of the variable medical costs to the Sheriff and seventy-six percent to the Parish from August 1, 2015, forward. The trial court found that the Parish is not entitled to a credit for funds already received by the Sheriff from the Parish for the care of non-Parish prisoners.

Finally, after setting forth the various duties and responsibilities of the Sheriff and the Parish regarding funding, management, and policymaking at the jail, the trial court determined that the per diems paid by the Parish pursuant to La. R.S. 13:5535(1) are contributions toward the "keeping and feeding" of Parish prisoners, that the Sheriff shall credit the 13:5535(1) contributions made each month to the monthly invoices billed to the Parish, and that the Parish shall reimburse the Sheriff for contributions under 13:5535(1) that have not been paid to the Sheriff.

The trial court designated the consolidated judgment as final for purposes of appeal, finding that the summary judgments it had granted in the captioned matter are conclusive of the liability aspects of the claims brought by the parties and that there is no just reason for delaying consideration of the judgments on appeal.

## DISCUSSION

### Motion for Summary Judgment

The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). After an opportunity for adequate discovery, a motion for summary

8

judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

The burden of proof rests with the mover. La. C.C.P. art. 966(D)(1). Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1). In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Juge v. Springfield Wellness, LLC, 18-0736, p. 5 (La. App. 1st Cir. 2/28/19), 274 So. 3d 1, 3-4, writ denied, 19-0513 (La. 5/28/19), 273 So. 3d 309.

## Applicable Law

Louisiana law provides that "[t]he police jury of each parish shall provide … a good and sufficient jail …." La. R.S. 33:4715. In furtherance of this mandate, La. R.S. 15:702 provides that "[t]he governing authority of each parish shall be responsible for the physical maintenance of all parish jails and prisons." The governing authority of each parish also "shall appoint annually a physician who shall attend the prisoners who are confined in parish jails whenever they are sick" or "[i]n lieu of appointing a physician, the governing authority of any parish may enter into a contract with a health care provider… to provide the requisite health care services." La. R.S. 15:703(A) and (B). Additionally, La. R.S. 13:5535(1) provides that the

9

parish governing authority shall pay sheriffs "[f]or keeping and feeding of prisoners in jail not less than three dollars and fifty cents per diem for each prisoner." Finally, "[a]ll expenses incurred ... by the arrest, confinement, and prosecution of persons accused or convicted of crimes, their removal to prison ... shall be paid by the respective parishes in which the offense charged may have been committed... The fees, salaries, and expenses to be paid shall be fixed and regulated by the parish or city authority unless otherwise provided by law...." La. R.S. 15:304.

With regard to sheriffs, Louisiana law provides that "[e]ach sheriff shall be the keeper of the public jail of his parish and shall by all lawful means preserve the peace and apprehend all disturbers thereof, and other public offenders." La. R.S. 13:704. "The sheriffs or jailkeepers shall supply each prisoner daily with wholesome food sufficient in quantity for the proper maintenance of life" and "shall provide the prisoners with clothing suited to and sufficient for the season." La. R.S. 15:705.

As such, the general scheme from these statutes is that the Parish is responsible for the expenses of establishing, maintaining, and operating the parish jail and for all expenses of feeding, clothing, and providing medical treatment to parish prisoners[1] while the Sheriff has the duty of operating the jail and seeing to it that the prisoners are properly cared for, fed, and clothed. See Amiss v. Dumas, 411 So. 2d 1137, 1141 (La. App. 1st Cir.), writ denied, 415 So. 2d 940 (1982). The jurisprudence has identified these expenses for which the Parish is responsible as "fixed" (general costs associated with the operation and maintenance of the prison)

_____

[1] We note that according to the statutory law and jurisprudence, the Parish's responsibility for expenses related to feeding, clothing, and providing medical care extends only to parish prisoners. See La. R.S. 15:566 and La. R.S. 15:824 (providing that the State, not the Parish, is responsible for paying the Sheriff for the keeping and feeding of prisoners housed in parish jails who have been convicted of a crime and sentenced to a state penitentiary pending appeal or who have been committed to the Department of Corrections); see also Webre v. Wilson, 95-1281, pp. 12-13 (La. App. 1st Cir. 4/4/96), 672 So. 2d 1124, 1132, and Prator v. Caddo Parish, 38,085, p. 10 (La. App. 2nd Cir. 5/5/05), 900 So. 2d 350, 355.

10

or "variable" (personal costs associated with each prisoner on a daily basis). See Prator v. Caddo Parish, 38,085, p. 10 (La. App. 2nd Cir. 5/5/05), 900 So. 2d 350, 355; see also City of Shreveport v. Caddo Parish, 27,519, pp. 24-25 (La. App. 2nd Cir. 6/23/95), 658 So. 2d 786, 798, writs denied, 95-2285 (La. 11/27/95), 663 So. 2d 728 and 95-2298 (La. 11/27/95), 663 So. 2d 729. "Fixed" expenses have further been recognized as constituting those costs for which parish governing authorities would be responsible under La. R.S. 33:4715, which would be present on any given day for the prison and its staff even in the absence of all prisoners. Prator, 38,085 at p. 10, 900 So. 2d at 355. While fixed expenses have generally been interpreted as being the sole responsibility of parish governing authorities, only those portions of variable expenses attributable to parish prisoners are the responsibility of the parish governing authority. See Prator, 38, 085 at p. 10, 900 So. 2d at 355 (noting the parish governing authority is not responsible for any identifiable variable expense associated solely with Department of Corrections, federal, or out-of-parish inmates); see also City of Shreveport, 27,519 at p. 26, 658 So. 2d at 799.

**Utilities, Equipment, Maintenance Employees, and Facility and Equipment Maintenance and Supplies**

In the instant case, the Parish contends that the trial court erred in finding utilities (water, gas, electricity, garbage disposal), equipment, maintenance employees, and facility and equipment maintenance and supplies are fixed expenses for which the Parish is one hundred percent responsible. From our reading of the foregoing statutes and jurisprudence, we find that the Parish is required to provide a good and sufficient jail and is responsible for the physical maintenance of Parish jails and prisons. Expenses associated with these statutory duties have previously been interpreted as including expenses associated with the maintenance and operation of the jail, such as utilities, administrative salaries, equipment and supplies necessary for the establishment and proper maintenance of the jail, cleaning

supplies, and routine daily maintenance. See Amiss, 411 So. 2d at 1141; Prator, 38,085 at p. 7, 900 So. 2d at 354; City of Shreveport, 27,519 at p. 25, 658 So. 2d at 798. The expenses herein contested by the Parish clearly fall within the category of costs associated with the maintenance and operation of the jail on any given day, even in the absence of prisoners, and as such, are fixed expenses. See Amiss, 411 So. 2d at 1141; Prator, 38,085 at p. 7, 900 So. 2d at 354; City of Shreveport, 27,519 at p. 25, 658 So. 2d at 798.

Furthermore, we do not find, based on the evidence in the record, that such an interpretation subverts the Parish's authority to "fix and regulate" fees, salaries, and expenses in accordance with La. R.S. 15:304. The Parish's argument centers around the contention that the Sheriff can increase these fixed costs by taking non-Parish prisoners into the Parish jail, which is in contravention of the authority given to the Parish in La. R.S. 15:304. However, the record is devoid of any evidence, other than percentages of prisoners, indicating that the presence of non-Parish prisoners has affected these fixed costs.

Accordingly, because the jurisprudence has established that the payment of such fixed costs is the responsibility of the Parish, and there is no authority permitting the sharing of these fixed costs, we find no error in the trial court's judgment finding the Parish is solely responsible and liable for the entirety of these fixed costs.[2]

---

[2] The Parish asserts that these costs should not be borne solely by the Parish because these costs are increased due to the presence in the jail of non-Parish prisoners. While we note, as other courts have done, that it is entirely possible that the increasing numbers of out-of-parish inmates being housed in parish jails may have an adverse impact upon the fixed operational and maintenance expenses of the facilities themselves, we find, as noted above, that the instant record is devoid of any evidence, other than percentages of prisoners, showing how prisoner population affects these expenses.

12

## Credit for Funds Already Received

The Parish contends that the trial court erred in finding that the Parish is not entitled to a credit for funds already received by the Sheriff from the Parish for the care of non-Parish prisoners. The basis for the Parish's argument is its contention that it has paid variable costs that have arisen because of the presence of non-Parish prisoners. However, to the extent that we have previously found that the costs for utilities (water, gas, electricity, garbage disposal), equipment, maintenance employees, and facility and equipment maintenance and supplies are fixed expenses for which the Parish is one hundred percent responsible, we find no merit to the Parish's argument that it is entitled to a credit with relation to these expenses. Furthermore, with respect to expenses recognized as variable by the trial court, including laundry rental, professional services, and prisoner supplies, we find that the trial court ordered the Parish to reimburse the Sheriff for a proportional share based on Parish and non-Parish prisoner populations for these costs and specifically provided that insofar as the Parish has already paid portions of these costs, it is entitled to deduct the payments already made. Therefore, the trial court has already recognized a "credit" toward the amount owed for amounts already paid. Accordingly, we likewise find the Parish's argument that it is entitled to a separate credit for amounts paid specifically for the care of non-Parish prisoners to be without merit.

## Medical Staff Costs

As noted above, La. R.S. 15:703 provides, in pertinent part:

> A. The governing authority of each parish shall appoint annually a physician who shall attend the prisoners who are confined in parish jails whenever they are sick. His salary shall be fixed by the governing authority....
> B. In lieu of appointing a physician, the governing authority of any parish may enter into a contract with a health care provider... to provide requisite health care services ... as required by this Section. The term "health care provider" as used in this Subsection means a person, partnership, limited liability partnership, limited liability

13

company, corporation, facility or institution licensed or regulated by the laws of this state to provide health care services or professional services as a physician...

\* \* \*

D. The sole responsibility of the governing authority of each parish which is mandated by the provisions of this Section with respect to providing health care services for prisoners shall be the appointment of a physician and the payment of the salary of that physician or its contractual obligations with a health care provider selected in accordance with this Section....

In the instant case, it is undisputed that rather than appointing a physician, the Sheriff, on behalf of the Parish, entered into a health services agreement with CorrectHealth to provide health care to inmates pursuant to La. R.S. 15:703 beginning August 1, 2015.[3] According to the contract, the Parish is to pay a set base amount assuming a prison population of 550 inmates. If the population exceeds 550, the Parish shall pay $0.48 per inmate per day for those inmates in excess of 550. The contract provides for nursing services, provider services, mental health services, medical administration, telehealth, electronic health records, on-site EKG, on-site IV services, utilization management, staff training, medical statistics, and insurance. However, the contract does not separate out the individual costs for these services. Rather, according to the testimony of Dr. Carlo Musso, owner of CorrectHealth, most of the contract represents the cost of staffing, which he considered to be a fixed cost. According to Dr. Musso, while prison population is taken into consideration as a whole, he does not price it out separately as a per diem per inmate per day. Rather, he determines the amount of staff necessary based on the total population of the jail, and according to Dr. Musso, this is a fixed cost that is not likely to change, if at all, if the prison population is reduced. Dr. Musso acknowledged that there are some variable components to the health services agreement, which are costs that are consumed by the individual inmates, such as medication, supplies, off-site care, labs,

---

[3] We note that the Parish does not assign as error the trial court's finding that the Sheriff, in the absence of Parish action, may appoint physicians or enter into contracts with health care providers to provide medical care at the jail. As such, we do not address this issue on appeal.

14

x-rays, and EMR expenses. According to Dr. Musso, when dividing the total contract cost of $566,000 by the number of inmates (550) and then dividing that amount by 365 days in a year, a per inmate, per day amount of $2.82 for all services is derived. Dr. Musso stated that the per diem for the Parish is $0.68, and therefore, that is the portion of the $2.82 expense which is truly variable.

The Parish, however, asserts on appeal that the trial court erred in finding that the staffing costs are a fixed cost for which the Parish is solely responsible. From our review of the applicable law and evidence presented in the instant case, we agree. As previously detailed, the jurisprudence has identified expenses for with the Parish is responsible as "fixed" or "variable." Fixed expenses are recognized as costs associated with the operation and maintenance of the prison and are costs that would be present on any given day for the prison and its staff even in the absence of all prisoners. Variable expenses, however, are recognized as personal costs associated with each prisoner on a daily basis and are directly related to prison population. Courts have considered medical expenses as such a variable cost. See Prator, 38,085, p. 10, 900 So. 2d at 355; City of Shreveport, 27,519 at p. 24, 658 So. 2d at 798.

Dr. Musso acknowledged in his deposition testimony that the type of health care service agreement he proposes for any institution depends on the needs and population of that institution. The staffing needs, including the level of staff, the number of staff, and amount of time the staff is contracted for, all vary depending on the population of the institution. Dr. Musso further acknowledged that prison population was taken into account in the instant contract, and that if there were extreme changes in population, staffing costs would be impacted. Because the evidence indicates that these costs are directly related to prison population, they are clearly variable expenses. Therefore, we find that trial court erred in finding these are fixed expenses for which the Parish is solely responsible.

Furthermore, because we find that these costs, in addition to the other contract medical costs, are variable expenses, we find that the trial court further erred in devising a proxy for dividing the responsibilities for health care costs of the Sheriff and the Parish based on its determination that staffing costs are fixed. Because the medical staffing costs, along with the remainder of the costs contained in the CorrectHealth contract are variable, we find that the Parish is only responsible for its proportional share of these costs based on the Parish and non-Parish prisoner populations. Accordingly, we order that the Parish, for each month from August 2015 forward, must reimburse the Sheriff for a proportional share based on Parish and non-Parish prisoner populations for the contract medical expenses. Insofar as the Parish has already paid portions of these costs, it is entitled to deduct the payments already made.

The Sheriff also assigns as error the trial court's finding that medical expenses from January 1, 2015 through July 31, 2015, which predated the CorrectHealth contract, are variable expenses. While the Sheriff presents little argument for why it contends these expenses are fixed, we note that the transcript from the hearing on the cross motions for summary judgment, wherein this issue was addressed, indicates that counsel for the Sheriff admitted on multiple occasions that the expenses were based on the number of prisoners. Accordingly, for the reasons already discussed in determining that the contract medical costs are variable expenses, we find no error in the trial court's judgment finding medical expenses from January 1, 2015 through July 31, 2015 are variable.

**Credit for La. R.S. 13:5535(1) per diems paid by the Parish**

Louisiana Revised Statutes 13:5535 provides, in pertinent part:

> The compensation, fees, and costs allowed sheriffs...shall be the following:

> (1) For keeping and feeding of prisoners in jail not less than three dollars and fifty cents per diem for each prisoner. Any surplus funds

16

remaining at the end of the fiscal year shall be returned to the parish governing authority.

The Sheriff contends that the trial court erred in characterizing the Parish's payment owed to the Sheriff pursuant to La. R.S. 13:5535 as being limited to payment for prisoner food costs and further erred in giving the Parish a credit equal to $3.50 per day, per prisoner, for the cost of its Parish prisoner's food to which it is not entitled.

The consolidated judgment provides the following with regard to the statutory per diem:

> 63. The court finds in favor of the Parish Government that per diems paid by the Parish Government pursuant to La. R.S. 13:5535(1) are contributions toward the "keeping and feeding" of Parish prisoners....
>
> 64. IT IS ORDERED that any monthly invoices from January 2015 forward, that the Sheriff shall credit the 13:5535(1) contributions made in that month against the expenses billed to the Parish Government for Parish [p]risoners.
>
> 65. IT IS ORDERED that the Sheriff adjust any invoice in which the 13:5535(1) contributions made in that month have not been credited against the expenses billed to the Parish Government for Parish [p]risoners so as to reflect such a credit.
>
> 66. IT IS ORDERED that the Parish Government reimburse the Sheriff for contributions under 13:5535(1) that have not been paid to the Sheriff in furtherance of the Court's interpretation of 13:5535(1).

From our review of the judgment at issue, we do not find that the trial court limited payments pursuant to La. R.S. 13:5535 to Parish prisoner food costs. Rather, the language specifically provides that the $3.50 per diems paid by the Parish pursuant to La. R.S. 13:5535(1) are for the "keeping and feeding" of Parish prisoners. This finding is consistent with the language of the statute itself and the jurisprudence interpreting the statute, as well as other statutory per diem statutes.[4]

---

[4] We note that any contention by the Sheriff on appeal that the statutory per diem is compensation to the Sheriff, which is not to be credited to the total costs of "keeping and feeding" Parish prisoners, is contrary to the language of the statute, other inmate per diem statutes, and the jurisprudence cited above.

17

See Prator, 38,085 at p. 9, 900 So. 2d at 355 (noting that a Sheriff's obligation to provide wholesome food, suitable clothing, and ordinary medical expenses are covered by the statutory per diem reimbursements contained in La. R.S. 13:5535 and 15:824). Furthermore, the jurisprudence recognizes a parish governing authority's obligation to bear the full cost of care for Parish prisoners, who are wards of the Parish, and therefore, the $3.50 per diem is a minimum amount for which the Parish is responsible. See Amiss, 411 So. 2d at 1141. Because the trial court judgment is not limiting the amount owed by the Parish for "keeping and feeding" of Parish prisoners to the $3.50 statutory per diem but rather finds that the Sheriff shall credit these contributions made each month for the "keeping and feeding" of Parish prisoners against the total amount of expenses billed to the Parish, we find no error in the trial court's judgment.[5]

**Evidence Room Shelving and Security System**

In the instant case, the Sheriff sought reimbursement from the Parish for costs for shelving and a security system for the evidence room, which the Sheriff asserted the Parish was obligated to pay pursuant to La. R.S. 33:4713. Louisiana Revised Statutes 33:4713(A) provides that "[e]ach parish shall provide and bear the expense of a suitable building and requisite furniture for the sitting of the district and circuit courts and such offices, furniture, and equipment as may be needed by the clerks and recorders of the parish for the proper conduct of their offices and *shall provide such other offices as may be needed by the sheriffs of these courts....*" (Emphasis added.)

When the Parish denied reimbursement, the Sheriff filed a motion for partial summary judgment, asserting that the Parish is responsible for providing suitable buildings and requisite furniture for the Sheriff pursuant to La. R.S. 33:4713. The

---

[5] The Sheriff asserts in brief that the trial court erred in giving the Parish a credit for the $3.50 per diem against the cost of food, because those payments have already been credited against the balance of all costs and compensation owed by the Parish to the Sheriff for jail operations. However, from our review of the record, we do not find any evidence that these amounts have been previously credited. Therefore, we find no merit to the Sheriff's argument.

Sheriff asserted that because the Parish had failed to reimburse the Sheriff for these costs, he is entitled to summary judgment in his favor ordering the Parish to reimburse him for costs associated with the evidence room shelving and security system.

From our review of the statutory law relied on by the Sheriff, we find the only obligation as to the Sheriff is to "provide such other offices as may be needed." The obligation to provide a suitable building and requisite furniture, i,e., shelving, is limited to the sitting of district courts and circuit courts, and the obligation to provide offices, furniture, and equipment, i.e., security system, is limited to clerks and recorders of the Parish. Accordingly, to the extent that the statutory provision relied on by the Sheriff does not obligate the Parish to provide and bear the expense of furniture for the Sheriff's office, we find, after our *de novo* review, that the trial court erred in granting summary judgment in favor of the Sheriff and ordering the Parish to reimburse the Sheriff for the expenditures made by his office for shelving and a security system for the evidence room.[6]

## CONCLUSION

For the foregoing reasons, we reverse those portions of the trial court judgment granting summary judgment in favor of the Sheriff and ordering the Parish to pay the Sheriff for the expenditures made by his office for shelving and a security system for the evidence room. We also reverse those portions of the trial court's

---

[6] The trial court granted summary judgment in favor of the Sheriff based upon the obligation of the Parish to pay all expenses incurred by the arrest, confinement, and prosecution of persons accused or convicted of crimes found in La. R.S. 15:304. However, this was not a basis upon which the Sheriff asserted it was entitled to summary judgment. Louisiana Code of Civil Procedure article 966F provides that the summary judgment may be *rendered or affirmed* only as to those issues set forth in the motion under consideration by the court at that time. Since the motion for summary judgment did not assert that the Sheriff is entitled to reimbursement from the Parish for the evidence room shelving and security system on any basis other than La. R.S. 33:4713, we cannot consider in our *de novo* review of the Sheriff's motion for summary judgment whether the Sheriff is entitled to reimbursement pursuant to another statute. See Bryant v. Premium Food Concepts, Inc., 16-0770, pp. 5-6 (La. App. 1st Cir. 4/26/17), 220 So. 3d 79, 83, writ denied, 17-0873 (La. 9/2917), 227 So. 3d 288. As such, while we reverse the trial court's granting of partial summary judgment in favor of the Sheriff on this issue, we do not address whether the Sheriff is entitled to reimbursement for these expenditures pursuant to another statutory provision.

19

consolidated judgment, namely paragraphs forty-two through fifty, finding that medical staff costs are fixed, that the Parish is responsible for one hundred percent of those costs, devising a reasonable proxy for dividing the responsibilities for health care costs of the Sheriff and the Parish, finding based upon the proxy that the Sheriff is responsible for twenty-four percent of medical costs and the Parish is responsible for seventy-six percent of the medical costs from August 1, 2015 forward, and ordering the Parish to reimburse the Sheriff for seventy-six percent of medical costs for each month from August 1, 2015. We hereby order that the Parish, for each month from August 2015 forward, must reimburse the Sheriff for a proportional share based on Parish and non-Parish prisoner populations for the contract medical expenses. Insofar as the Parish has already paid portions of these costs, it is entitled to deduct the payments already made. In all other respects, the consolidated judgment is affirmed. All costs of this appeal, in the amount of $2,025.00 are assessed to Daniel H. Edwards, in his Official Capacity as Sheriff for Tangipahoa Parish.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

**2021 CA 0552**

DANIEL H. EDWARDS, IN HIS OFFICIAL CAPACITY AS SHERIFF OF
TANGIPAHOA PARISH, AND THE LAW ENFORCEMENT DISTRICT OF THE
PARISH OF TANGIPAHOA THROUGH DANIEL H. EDWARDS, EX-OFFICIO
CHIEF EXECUTIVE OFFICER

VERSUS

TANGIPAHOA PARISH GOVERNMENT THROUGH ITS PARISH COUNCIL
AND PARISH PRESIDENT, GORDON BURGESS

---

**WELCH, J., concurring in part, dissenting in part.**

I respectfully dissent from the majority's holding that the trial court erred in granting summary judgment in favor of the Sheriff and ordering the Parish to reimburse the Sheriff for the expenditures made by his office for shelving and a security system for the evidence room. The issue before the court on the motion for summary judgment—*i.e.*, the relief claimed by the Sheriff—was reimbursement. Regardless of whether the Sheriff requested reimbursement under La. R.S. 15:304 or La. R.S. 33:4713, the only issue under consideration was the Sheriff's entitlement to reimbursement. Louisiana Code of Civil Procedure article 966(F) specifically uses the term "issue" under consideration, not "statute" under consideration.

While I concur with the majority on the remaining issues, I write separately regarding the contract medical expenses. Any health services agreement and healthcare provider would require the names and treatment provided to individuals (here, the prisoners) to be documented for numerous reasons, including the potential for medical malpractice claims. It should be a simple, easily verified task to determine whether an inmate was a Parish prisoner or a non-Parish prisoner, settling the question of who is responsible for the medical services rendered. There

1

is no reason to resort to a speculative formula when it can be readily determined exactly which persons received the medical services in order to determine the healthcare costs. For these reasons, I respectfully concur in part and dissent in part.

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2021 CA 0552

DANIEL H. EDWARDS, IN HIS OFFICIAL CAPACITY AS SHERIFF OF
TANGIPAHOA PARISH, AND THE LAW ENFORCEMET DISTRICT OF
THE PARISH OF TANGIPAHOA THROUGH DANIEL H. EDWARDS, EX-
OFFICIO CHIEF EXECUTIVE OFFICER

VERSUS

TANGIPAHOA PARISH GOVERNMENT THROUGH ITS PARISH
COUNCIL AND PARISH PRESIDENT, GORDON BURGESS

**HOLDRIDGE, J., concurs.**

I respectfully concur in the result. I specifically concur for the reasons assigned by Judge Penzato as to the expenditures made by the Sheriff for the evidence room shelving and security system.

**DANIEL H. EDWARDS, IN HIS OFFICIAL CAPACITY AS SHERIFF OF TANGIPAHOA PARISH, AND THE LAW ENFORCEMET DISTRICT OF THE PARISH OF TANGIPAHOA THROUGH DANIEL H. EDWARDS, EX-OFFICIO CHIEF EXECUTIVE OFFICER**

**VERSUS**

**TANGIPAHOA PARISH GOVERNMENT THROUGH ITS PARISH COUNCIL AND PARISH PRESIDENT, GORDON BURGESS**

**PENZATO, J., concurs.**

The Sheriff did not clearly move for summary judgment pursuant to La. R.S. 15:304 to recover reimbursement from the Parish for expenditures made by his office for the evidence room shelving and security system. Therefore, the Sheriff's summary judgment on this issue was improperly granted by the trial court. La. C.C.P. art. 966(F). Because no other motion for summary judgment presently before this court on appeal sought resolution of this claim, the issue remains outstanding upon this court's reversal of the portion of the trial court's judgment granting the Sheriff's motion for partial summary judgment. *See Trufund Financial Services, Inc. v. City of Baton Rouge/Parish of East Baton Rouge*, 2020-0800 (La. App. 1st Cir. 4/26/21), 2021 WL 1609238, at 4 (unpublished) ("A court cannot render summary judgment dismissing a claim that has not been challenged by the pleading.") Similarly, *see Anderson v. Laborde Construction Industries, LLC*, 2019-0356 (La. App. 1st Cir. 3/12/20), 311 So.3d 1072, 1080, *writ denied*, 2020-00924 (La. 10/20/20), 303 So. 3d 307 (Claims asserted against mover in a cross-claim and third-party demand were not placed before the court in mover's motion for summary judgment; therefore, the trial court erred by granting mover's motion and dismissing

all claims against it, including those asserted in the cross-claim and third-party demand.)

For this reason, I would remand this matter to the trial court for a determination of the merits of the Sheriff's claim for reimbursement for expenditures made by his office for shelving and a security system for the evidence room.